IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02038-WYD-KLM

JOSEPH M. ERNEST,

    Plaintiff,

v.

LOCKHEED MARTIN CORPORATION,

    Defendant.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Defendant Lockheed Martin Corporation's (hereinafter referred to as "Defendant" or "Lockheed Martin") Motion to Dismiss or in the Alternative Stay Proceedings Pending Arbitration (docket #9), filed December 3, 2007. Plaintiff filed a response and the Defendant filed a reply in support of its motion. In an Order dated April 4, 2008, I found that Defendant's request for limited discovery on the issue of whether the arbitration agreement was executed by the Plaintiff was appropriate. In compliance with my Order, the parties conducted discovery on this narrow issue and subsequently submitted briefing to the Court. After carefully considering the motion, response, reply, and supplemental briefing submitted by both parties, I find that the arbitration agreement is valid and thus, this matter should be stayed pending arbitration.

II.     BACKGROUND

In this action, the Plaintiff asserts the following two claims for relief arising out of Defendant Lockheed Martin's alleged failure to reemploy him following his military service in Iraq: (1) a claim under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and (2) a claim for civil fines under Colorado law.  Lockheed Martin has moved to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or in the alternative stay these proceedings pending the outcome of arbitration.

By way of background, on October 1, 2007, Plaintiff filed the instant action alleging that Lockheed Martin failed to reemploy him after returning from his military service in Iraq.  In its motion to dismiss or in the alternative stay the proceedings, Lockheed Martin alleges that on July 18, 2005, the Plaintiff executed an arbitration agreement with the Defendant.  (Def.'s Ex. A.)  The arbitration agreement requires all disputes covered by the agreement to be submitted to arbitration when the sued party elects to divert the case from court to arbitration.  (*Id.* ¶ 4.)  Specifically, the arbitration agreement defines disputes covered by the agreement to include

> all disputes arising out of or relating to your application, hiring, employment, terms and conditions of employment, or your separation from employment, including . . . claims relating to employment discrimination . . . covered by federal, state, or local laws, ordinances, statutes or state common law or tort law.  For example, the Agreement covers all claims of: wrongful discharge, whistleblower protection, unlawful retaliation, defamation, emotional distress, breach of express or implied contract, violation of public policy, or under employment discrimination laws such as Title VII of the Civil Rights Act of 1866 or 1964, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the

> Americans With Disabilities Act, the Family Medical Leave
> Act, or any federal, state or local law or ordinance pertaining
> to your employment.

(*Id.* ¶ 2.) Further, the arbitration

> agreement does not cover disputes pertaining to workers'
> compensation and/or unemployment compensation; disputes
> covered by collective bargaining agreements; disputes
> related to benefits such as those included in plans providing
> retirement, savings, life insurance, disability benefits, and/or
> medical benefits; or, disputes relating to the protection of
> information that is confidential, trade secret, classified, or
> otherwise proprietary to the Company . . . .

(*Id.* ¶ 3.) Lockheed Martin states that pursuant to the arbitration agreement, the Defendant "elects to divert this case to arbitration." (Def.'s Mot. at 3.)

In his response, Plaintiff disputes Lockheed Martin's argument. Specifically, Plaintiff claims that he did not enter into an arbitration agreement with the Defendant. Plaintiff attached an affidavit to his response averring that he "did not sign an arbitration agreement with Lockheed Martin Corp." (Pl.'s Aff. ¶ 11.) Plaintiff further states that "[t]he first notice I had that a purported arbitration agreement was being advanced as a defense by Lockheed Martin Corp. in my lawsuit against them was when my attorney faxed me a copy of the purported agreement with my purported signature." (Pl.'s Aff. ¶ 14.) Plaintiff argues that he does not recall any discussion of an arbitration agreement with Lockheed Martin in 2005 nor does he have a copy of the purported agreement. (Pl.'s Resp. at 7.)

Plaintiff also attaches an affidavit from a former co-worker, Emmett Miller, who states that he did not execute an arbitration agreement with Lockheed Martin. (Miller Aff. ¶ 11.) Mr. Miller further states that he was with the Plaintiff when the employees

were gathered to complete their healthcare forms, retirement benefit forms and other paperwork. (Miller Aff. ¶¶ 4-6.)

III. STANDARD OF REVIEW

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *Todd Holding Co., Inc. v. Super Value Stores, Inc.*, 744 F. Supp. 1025, 1026 (D. Colo. 1990). Thus, the court must satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim. *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998). "[T]he burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.1994). "Mere conclusory allegations of jurisdiction are not enough." *United States, ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1196, 1160 (10th Cir. 1999).

When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack can be either a facial attack to the allegations of the complaint or a factual attack. *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). Where there is a facial attack, the Court must look to the factual allegations of the Complaint. *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). In a factual attack, the court may consider matters outside the pleadings, and the motion is not converted to a motion for summary judgment. *Id.*; *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992). "The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56." *Osborn v. United States*, 918 F.2d 724, 730 (*quoting Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730.

IV. ANALYSIS

As I previously stated, in its motion, Defendant Lockheed Martin argues that this case should be dismissed for lack of subject matter jurisdiction or in the alternative stayed pending arbitration. Lockheed Martin claims the since the parties entered into an arbitration agreement that applies to this dispute and the fact that Lockheed Martin elected to divert this dispute to arbitration, the matter should be dismissed or stayed.

    A.    Whether the Plaintiff Entered into an Arbitration Agreement with Lockheed Martin

        1.    Relevant Law

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4. A motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C. § 4 which reads as follows:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall

proceed summarily to the trial thereof.

9 U.S.C. § 4. Accordingly, the Supreme Court has held that when the parties to an agreement dispute whether arbitration is required by that agreement, a federal court may only resolve the issue when the parties dispute the making of the arbitration agreement itself. *Id.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). "[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp.*, 388 U.S. at 404.

This Court has previously held that when the dispute involves the formation of the arbitration agreement itself, courts apply "a standard similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D.Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D.Kan. 2003)). The defendant bears the initial burden of setting forth sufficient evidence to demonstrate that an enforceable arbitration agreement exists. *Id.* Then, the burden shifts to the plaintiff to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* If the plaintiff fails to meet his burden, then arbitration is appropriate for all disputes covered by the arbitration agreement. However, if the plaintiff establishes a genuine issue of material fact, a jury trial "on the existence of the arbitration agreement is required." *Id.*

    2. <u>Whether Defendant Submitted Sufficient Evidence to Demonstrate that an Enforceable Arbitration Agreement Exists</u>

Turning to my analysis, I must first review whether Lockheed Martin satisfied its initial burden by submitting sufficient evidence to demonstrate that an enforceable

arbitration agreement exists. Lockheed Martin submitted the following relevant evidence in its supplemental briefing.

First, Lockheed Martin submitted the declaration of Mr. Ken Buck, a former Senior Manager of Human Resources for Lockheed Martin. Mr. Buck stated that in 2005, Lockheed Martin acquired Sytex, Inc., which was Plaintiff's former employer. In conjunction with that acquisition, Sytex employees were offered employment with Lockheed Martin. As a condition of their employment with Lockheed Martin, Lockheed Martin "required every Sytex employee to sign three form documents: (1) an Arbitration Agreement, (2) an Employee Proprietary Information and Innovation Agreement, and (3) a Conflict of Interest Certificate." (Buck Decl. ¶ 4.) Mr. Buck further stated that he was responsible for ensuring that former Sytex employees completed these forms. Some former Sytex employees refused to sign the form arbitration agreement, and Lockheed Martin rescinded those individuals' employment offers. Mr. Buck finally stated that "[e]very Sytex employee who transitioned to Lockheed Martin in 2005 signed the three form agreements, and copies or originals were placed in those employees' personnel files." (Buck Decl. ¶ 8.)

Second, on June 4, 2008, Lockheed Martin took the deposition of Mr. Emmett Miller and submitted the transcript of Mr. Miller's testimony as part of its supplemental briefing. By way of background, Mr. Miller was a former co-worker of Plaintiff's at both Sytex and Lockheed Martin. As I previously noted, in his response to the motion to dismiss, Plaintiff offered an affidavit in which Mr. Miller stated that he did not execute an arbitration agreement with Lockheed Martin. However, in his deposition on June 4,

2008, Mr. Miller testified that while he did not recall signing an arbitration agreement with Lockheed Martin, when Defendant presented him with the agreement, Mr. Miller stated that it appeared to be his signature on an arbitration agreement with Lockheed Martin. Mr. Miller also stated that he did not recall signing the other two required documents (a proprietary information and innovation agreement and conflict of interest certificate). However, upon reviewing his personnel file and the signatures on these documents, Mr. Miller acknowledged that he signed the required documents. Mr. Miller further stated that he does not remember refusing to sign any document. Finally, Mr. Miller corrected a statement in the affidavit offered by Plaintiff and stated that he did not complete his paperwork for Lockheed Martin in the same room at the same time with the Plaintiff. (*See* Miller Aff. ¶ 6.)

Third, on June 4, 2008, Lockheed Martin took the deposition of Plaintiff and submitted the transcript of Plaintiff's testimony as part of its supplemental briefing. Similar to Mr. Miller, Plaintiff stated that while he remembered signing Lockheed Martin transition paperwork, he could not recall the specific documents. When presented with a copy of the arbitration agreement, Plaintiff acknowledged that although the signature on the agreement "looks similar to other things that I have signed," he did not sign the arbitration agreement. (Pl.'s Dep. 34:19-35:4.) Plaintiff also stated that he has no reason to believe that his signature was fraudulently placed on the arbitration agreement. However, when presented with both the employee proprietary information and innovation agreement and the conflict of interest certificate, Plaintiff admitted that while he does not recall signing these forms, the forms appear to contain his signatures.

Finally, both parties endorsed forensic document examiners as experts and submitted the reports as part of their supplemental briefing. Lockheed Martin's expert, Darla McCarley-Celentano, reviewed approximately 47 documents and gave the following opinions:

> Within the limitations imposed by examination of electrographic copies in lieu of original documents, examination and comparison of items Q1A-B with items K1-K47 (Joseph M. Ernest) resulted in the following conclusions and observations and are based upon a reasonable degree of scientific certainty as follows:
>
> 1. It is highly probable that the questioned signature, printing and date submitted on the Arbitration Agreement in exhibit Q1B were written by the author of K1-K47 (Joseph M. Ernest).

(McCarley-Celentano Report at 4.) Ms. McCarley-Celentano also concluded that "[t]here is no evidence to suggest that the signature panel was created by a 'cut and paste' method", meaning that it is unlikely that the signature on the arbitration agreement was fraudulently cut and pasted from other signatures in Lockheed Martin's possession. *Id.*

Plaintiff's expert, Joseph Fanciulli, conducted a similar examination of the relevant documents and signatures. He concluded that while his opinion is limited by the examination of copies in the absence of originals, "[t]here is some pictoral similarity between the 'Joseph M. Ernest' signature and associated hand printed date on item QD 46 and the signatures and associated hand printed dates on the other submitted items." (Fanciulli Report at 4.) Mr. Fanciulli finally stated that "[b]ased on the limitations

presented by an examination of copies, I am not able to positively identify Joseph M. Ernest as the author of the signature and date on item QD 46." *Id.*

Given the legal standard set forth in both *Stein* and *SmartText Corp.*, I find that after reviewing the afore-mentioned evidence put forth by the Defendant in its supplemental briefing, the Defendant has met its initial burden of demonstrating an enforceable arbitration agreement. The burden now shifts to Plaintiff to show that there is a genuine issue of material fact as to the making of the agreement. *Stein*, 396 F. Supp. 2d at 1213.

        3.      <u>Whether Plaintiff Demonstrated a Genuine Issue of Material Fact as to the Making of the Arbitration Agreement</u>

Plaintiff sets forth three arguments as to why the arbitration agreement is not enforceable: (1) Plaintiff denies signing the arbitration agreement; (2) Defendant failed to produce the original arbitration agreement; and (3) neither expert could determine with certainly that the photocopy of the signature on the arbitration agreement is Plaintiff's signature.

With respect to Plaintiff's first argument that he denies signing the arbitration agreement, Plaintiff states that while he did not sign the arbitration agreement, he does not have any evidence to suggest his signature was fraudulently affixed to the agreement. In *Cross v. United States of America*, 1998 WL 255054 at *21 (10th Cir. May 19, 1998), the Tenth Circuit addressed a similar issue to the issue currently before me. In *Cross*, the plaintiffs claimed that they could not remember whether they signed IRS interrogatories. However, the Tenth Circuit stated that the plaintiffs' "lack of memory about the form is entitled to little weight in determining whether they actually

signed it." *Id.* Additionally, while not binding on this Court, I am persuaded by the Fifth Circuit's holding in *Batiste v. Island Record, Inc.*, 179 F.3d 217 (5th Cir. 1999). In *Batiste*, the court held that a party's "inability to remember signing [contracts] is not sufficient to raise a material issue as to the validity of the agreements." *Id.* at 223.

Here, the Plaintiff denies that he signed the arbitration agreement with Lockheed Martin based on the fact that he does not recall signing the document. Interestingly, the Plaintiff stated that while he could not recall signing other transition documents, he admitted the authenticity of his signature on both the employee proprietary information and innovation agreement and the conflict of interest certificate. According to evidence presented by the Defendant, the arbitration agreement was presented to all transitioning employees along with the other two documents Plaintiff admits to signing. Additionally, the arbitration agreement, the employee proprietary information and innovation agreement, and the conflict of interest certificate all bear the same date. It is inconsistent and implausible for the Plaintiff to argue that due to his lack of memory, he did not sign the arbitration agreement while at the same time admitting that the employee proprietary information and innovation agreement and the conflict of interest certificate bear his signature (even though he does not recall signing those documents). Finally, there is no evidence suggesting that Plaintiff's signature was fraudulently placed on the arbitration agreement. Based on the evidence before me, I find that this argument is unpersuasive and fails to raise a genuine issue of fact.

Second, Plaintiff argues that the Defendant cannot establish a valid arbitration agreement by offering a photocopy when a genuine question has been raised as to the

authenticity of the signature affixed to the document. Specifically, Plaintiff claims that the "best evidence rule" requires the exclusion of the photocopy of the arbitration agreement bearing his signature. The Tenth Circuit has held that "under Rule 1004 of the Federal Rules of Evidence, 'the original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if–(1) . . . all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.'" *Cross*, 1998 WL 255054 at *11 (citing *Cartier v. Jackson*, 59 F.3d 1046, 1048-49 (10th Cir. 1995)). The *Cross* court further stated that "Rule 1004(1) thus requires the court to undertake two related inquiries before admitting secondary evidence regarding a document: (1) whether the document in question was actually lost or destroyed, . . . and (2) whether the party offering the document has acted in bad faith." *Id.* at *12 (internal citations omitted).

Turning to the first inquiry, the *Cross* court instructed that "by far the most common means of proving loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document." *Id.* "If the proponent demonstrates that such a diligent search has been conducted, courts have admitted the secondary evidence even though the proponent is unable to explain with absolute certainly what happened to the original document." *Id.* at *12-13 (internal citations omitted). The *Cross* court went on to say that "[a]s to the second inquiry, courts have concluded that the mere possibility that someone has tampered with the proffered secondary evidence is insufficient to establish the proponent's bad faith." *Id.* at *13 (internal citations omitted). "In contrast, the purposeful destruction or withholding

of original documents and the fabrication of secondary evidence will support a finding of bad faith under Fed. R. Evid. 1004(1)." *Id.*

In the instant case, I find that both inquiries under Fed. R. Evid. 1004(1) support the admissibility of the photocopy of the arbitration agreement. First, the Defendant submitted evidence that it was its business practice to place either copies or original human resource documents into the personnel files of employees who were transitioning from Sytex. (Buck Decl. ¶ 8.) Defendant also submitted a declaration by Mary Elizabeth Jones, Executive Assistant to the Vice President of Human Resources in the Enterprise Solutions and Services Department of Lockheed Martin Corporation. Ms. Jones stated that when Plaintiff requested the original arbitration agreement in discovery, she personally searched 178 boxes of documents for the original agreement but was unsuccessful. This evidence has not been adequately rebutted by the Plaintiff. Thus, I find that this diligent but unsuccessful search satisfies the first inquiry for admitting secondary evidence. As to the question of bad faith in the loss or destruction of the original arbitration agreement, there has been no evidence presented to me to suggest bad faith.

Moreover, I do not find any merit in Plaintiff's additional arguments that the arbitration agreement is invalid or inadmissible because Defendant's records custodian did not personally observe Plaintiff sign the document or that the arbitration agreement is unreliable because Defendant did not produce a chain of custody for the proffered document. Plaintiff cites no supporting authority for his assertions, and ample case law suggests otherwise. *See United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998)

(stating that Fed. R. Evid. 803 "does not require that the custodian personally gather, input, and compile the information memorialized in a business record"); *see also Conoco Inc. v. Dept. of Energy*, 99 F.3d 387, 392 (Fed. Cir. 1996) (stating that "the custodian or other qualified witness who must authenticate business records need not be the person who prepared or maintained the records, or even an employee of the record-keeping entity, as long as the witness understands the system used to prepare the records"); *see also Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 167 F.R.D. 90, 121 (D.Colo. 1996) (stating that "this is not a police investigation, and I am not concerned with a strict chain of custody . . . [u]nless there is evidence to the contrary, when materials are produced for inspection the good faith of the tender is presumed.") Therefore, I conclude that Plaintiff's arguments regarding the admissibility of the photocopy of the arbitration agreement are not sufficient to raise a material issue as to the enforceability of the arbitration agreement.

Finally, Plaintiff argues that since the retained forensic experts could not "state with 100% certainty, that the proffered Arbitration Agreement contains Mr. Ernest's signature because it is merely a copy," the authenticity of the photocopy is in question. (Pl.'s Supp. Br. at 15.) Plaintiff again fails to cite any authority for its argument that an expert must be 100% certain of his or her opinions. I find that this assertion is without merit or support in the law. In the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court was "called upon to determine the standard for admitting expert scientific testimony in a federal trial." *Id.* at 682. It first held in that regard that "under the Rules the trial judge must ensure that any

and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. However, it rejected the "general acceptance" standard adopted by the majority of Circuits pursuant to *Frye v. United States*, 293 F. 1013, 1014 (1923), finding it to be "at odds with the 'liberal thrust' of the federal rules", and specifically, Fed. R. Evid. 702 governing expert testimony. 509 U.S. at 587-589. Instead, *Daubert* held that the appropriate standard was whether the subject of an expert's testimony involved scientific knowledge. *Id.* at 589-90. This term "implies a grounding in the methods and procedures of science" and "connotes more than subjective belief or unsupported speculation." *Id.* at 590. "Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Id.* However, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method" and the testimony regarding same "must be supported by appropriate validation, i.e., 'good grounds,' based on what is known." *Id.*

Here, Defendant's expert states in her report that her conclusions are based upon a reasonable degree of scientific certainty. I find that this is sufficient under the above-cited case law.[1] It is absurd to argue that the expert's opinions must be made with 100% certainly when the Supreme Court held that there are no certainties in science. Accordingly, I find that Plaintiff has failed to demonstrate a triable issue of fact as to the authenticity of the photocopy. Thus, I find that an enforceable arbitration

---

[1] I note that neither party has raised any *Daubert* challenges to the retained forensic experts.

agreement exists between Plaintiff and Defendant.

        B.      <u>Whether Plaintiff's USERRA Claim is Subject to Arbitration</u>

Having found that an enforceable arbitration agreement exists between the parties, I now turn to the issue of whether Plaintiff's USERRA claim is subject to arbitration. In his response to the motion to dismiss, the Plaintiff argues that Congress intended to preempt arbitration when it passed USERRA.

The Federal Arbitration Act ("FAA") was enacted "to reverse the long-standing judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Corp.*, 500 U.S. 20, 24 (1991). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. "There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration."  *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994). Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995). Thus, "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985).

Turning to the case at hand, the arbitration agreement requires that claims arising out of hiring, employment, terms and conditions of employment, and separation from employment be submitted to arbitration when the sued party elects to divert the case from court to arbitration. Since the parties agreed to arbitrate claims surrounding the Plaintiff's hiring and termination from employment, the agreement is enforceable unless Plaintiff can demonstrate that Congress intended to preclude arbitration for his USERRA claim.

USERRA reads in relevant part:

> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

38 U.S.C. § 4311(b).

In *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672 (5th Cir. 2006), the Fifth Circuit held that claims brought under USERRA were subject to arbitration. The *Garrett* court went through a detailed analysis of the text and legislative history of USERRA and found that "Congress took no specific steps in USERRA, beyond creating and protecting substantive rights, that could preclude arbitration." *Id.* at 678. "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute, it only submits to their resolution in an arbital, rather than judicial forum." *Id.* at 677. The

court went on to say that "USERRA provides several means for the resolution of disputes, and there is no guarantee of a federal forum for aggrieved employees." *Id.* at 678. The court also held that "[e]nforcement of employment arbitration agreements does not disserve or impair the protections guaranteed by USERRA." *Id.* at 681. To further support its position, the *Garrett* court noted that claims arising under other statutes such as the Securities and Exchange Acts of 1933 and 1934, the Sherman Act, and RICO are also appropriate for arbitration. *See Landis v. Pinnacle Eye Care, LLC*, 2007 WL 2668519 at *4 (W.D.Ky. Sept. 6, 2007); *Gilmer*, 500 U.S. at 26.

While this decision is not binding on this Court, I find *Garrett* to be both instructive and persuasive. Even though the legislative history of USERRA provides that the substantive rights and the ability to litigate them should not be diminished by contractual agreements, I find that Congress did not intend to preclude arbitration for USERRA claims. Further, a number of courts have followed the reasoning in *Garrett*. *See Klein v. City of Lansing*, 2007 WL 1521187 (W.D. Mich. May 21, 2007); *Landis*, 2007 WL 2668519 (W.D.Ky. Sept. 6, 2007); *Kitts v. Menards, Inc.*, 519 F. Supp. 2d 837 (N.D.Ind. 2007); and *Terrebonne v. K-Sea Trans. Corp.*, 477 F.3d 271 (5th Cir. 2007).

On the other hand, Plaintiff argues that I should follow the logic set forth in *Lopez v. Dillard's Inc.*, 382 F. Supp. 2d 1245 (D.Kan. 2005). In *Lopez*, the United States District Court for the District of Kansas found that claims brought under USERRA were not subject to an otherwise valid arbitration agreement. I note, however, that the *Lopez* case predates the Fifth Circuit's decision in *Garrett*. In fact, in *Lopez*, Judge Belot stated that his decision was based on the district court's determination in *Garrett v.*

*Circuit City Stores, Inc.*, 338 F. Supp. 2d 717 (N.D.Tex. 2004), which was reversed by the Fifth Circuit. *See Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672 (5th Cir. 2006)*.* Thus, I decline to follow the court's reasoning in *Lopez* and adopt the Fifth Circuit's logic in *Garrett* as I find it is consistent with the Supreme Court's determination that the right to a judicial forum for claims of employment discrimination is not a substantive right. *Gilmer*, 500 U.S. at 28-30. Guided by the reasoning in *Garrett* and the strong federal policy encouraging arbitration, I find that Plaintiff's USERRA claim is subject to arbitration under the FAA. Accordingly, this matter is stayed pending arbitration.

V. <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendant Lockheed Martin Corporation's Motion to Dismiss or in the Alternative Stay Proceedings Pending Arbitration (docket #9), filed December 3, 2007, is **DENIED IN PART AND GRANTED IN PART.** The motion is denied to the extent it requests dismissal of this action. The motion is granted to the extent it requests that this matter be stayed pending arbitration. It is

FURTHER ORDERED that pursuant to 9 U.S.C. §§ 3-4, the parties shall proceed with arbitration in accordance with the arbitration agreement. This Court shall retain jurisdiction until arbitration has been completed. It is

FURTHER ORDERED that since the length of the arbitration process is uncertain, I find that this case should be administratively closed pursuant to D.C.COLO.LCivR 41.2 with leave to be reopened for good cause shown. If no action is taken to reopen this case before August 1, 2009, the case will be dismissed without

prejudice without any further notice to either party.

Dated: July 29, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge